# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**BRENDAN A. HURSON**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

June 14, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:     *April H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
        Civil No. 22-2474-BAH

Dear Counsel:

On September 28, 2022, Plaintiff April H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 9), the parties' dispositive filings[1] (ECFs 11 and 14), and Plaintiff's reply (ECF 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motions, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on December 13, 2017, Tr. 310–11, and a Title XVI application for Supplemental Security Income ("SSI") benefits on January 31, 2019,[2] Tr. 42, alleging a disability onset of July 9, 2017. Tr. 310. Plaintiff's DIB claim was denied initially and on reconsideration. Tr. 113–14, 129–30.[3] On December 5, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 52–70. Following the hearing, on January 6, 2020, the ALJ determined that Plaintiff was not disabled within the

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, both parties filed motions for summary judgment, and Plaintiff filed an alternative motion for remand. *See* ECFs 11, 14.

[2] Plaintiff's SSI application does not appear in the record before the Court. As such, the Court accepts as true the filing date noted by the ALJ.

[3] These citations correspond to Plaintiff's DIB claim. As the Court lacks documentation related to Plaintiff's SSI claim, it infers that Plaintiff's SSI claim was also denied initially and on reconsideration based upon the parties' representations.

*April H. v. Kijakazi*
Civil No. 22-2474-BAH
June 14, 2023
Page 2

meaning of the Social Security Act[4] during the relevant time frame.  Tr. 131–51.  The Appeals Council remanded Plaintiff's case for further review on October 28, 2020.  Tr. 152–56.  On June 11, 2021, the ALJ held another hearing.  Tr. 71–100.  The ALJ issued another decision denying Plaintiff's claims on January 28, 2022.  Tr. 22–51.  The Appeals Council denied Plaintiff's request for review of that decision, Tr. 7–13, so the ALJ's January 28, 2022 decision constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    <u>THE ALJ'S DECISION</u>

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 9, 2017, the alleged onset date."  Tr. 28.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "status-post cerebral vascular accident, affective mood disorder, diabetes mellitus, degenerative disc disease with radiculopathy, rheumatoid arthritis, neuropathy, and chronic pain syndrome."  *Id*.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "acute bronchitis, unspecified hearing loss, foot callus, hypertension, hyperlipidemia, chest pain with mildly elevated troponin level in May 2021, trigger finger of the thumb, greater trochanteric bursitis, tendinosis of the left shoulder, and gastroesophageal reflux disorder."  *Id*.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 29.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally use foot controls with the bilateral lower extremities.  She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ropes, ladders, and scaffolds.  She can frequently reach overhead with the left upper extremity.  She can frequently handle bilaterally.  She must avoid concentrated exposure to hazards such as dangerous machinery and unprotected

[4] 42 U.S.C. §§ 301 et seq.

*April H. v. Kijakazi*
Civil No. 22-2474-BAH
June 14, 2023
Page 3

heights or parts.  She can perform simple, routine tasks with no production rate for pace of work (e.g., assembly-line work).

Tr. 33.  The ALJ found that Plaintiff was unable to perform past relevant work as a nursing assistant (DOT[5] #355.674-014) but could perform other jobs that existed in significant numbers in the national economy.  Tr. 39–41.  Thus, the ALJ determined that Plaintiff was not disabled.  Tr. 42.

## III.  **LEGAL STANDARD**

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.  **ANALYSIS**

Plaintiff raises four arguments on appeal, specifically that the ALJ: (1) erred by failing to find Plaintiff's tendinopathy to be a severe impairment; (2) failed to adequately address whether Plaintiff's cervical spinal stenosis meets or equals a listed impairment; (3) failed to properly evaluate the opinion of Dr. Ali Rahimian; and (4) failed to properly evaluate a psychiatric evaluation by Dr. Shakuntala Dhir.  ECF 11-1, at 14–27.  Defendant counters that: (1) the ALJ "properly and fully considered" Plaintiff's tendinopathy; (2) Plaintiff "does not meet . . . the stringent requirements of listing 1.15," and (3) the ALJ's evaluation of the opinions of Drs. Rahimian and Dhir was proper under applicable regulations.  ECF 14-1, at 6–19.

### A.  The ALJ Did Not Err at Step Two.

The Court first considers Plaintiff's argument that the ALJ "erred by declining to find

---

[5] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*April H. v. Kijakazi*
Civil No. 22-2474-BAH
June 14, 2023
Page 4

Plaintiff's left shoulder tendinopathy[6] with rotator cuff tear to be a severe impairment." ECF 11-1, at 14.  "At step two of the five-step sequential evaluation, the ALJ determines if the claimant has an impairment, or a combination of impairments, that is severe and meets the duration requirement." *Sharon W. v. Comm'r, Soc. Sec. Admin*., No. SAG-18-2707, 2019 WL 2234499, at *1 (D. Md. May 23, 2019).  An impairment is "severe" if it "significantly limit[s the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).  If the ALJ finds any impairment to be severe, "the ALJ continues with the sequential evaluation and considers how each of the claimant's impairments impacts her ability to perform work." *Sharon W.*, 2019 WL 2234499, at *1.  In formulating a claimant's RFC, the ALJ "consider[s] all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe' . . . ." 20 C.F.R § 404.1545(a)(2); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(a)(2), 416.945(e).

Here, the ALJ's assessment of the severity of Plaintiff's tendinopathy is supported by substantial evidence.  The ALJ noted that "[a]n MRI of the left shoulder dated January 23, 2019 revealed small high-grade partial-thickness superimposed small 3-4 mm focus of intrasubstance calcific deposition, supraspinatus consistent tendon with calcific tear with underlying tendinosis tendinitis." Tr. 36.  The ALJ also acknowledged that, in January 2019, Plaintiff "demonstrated forward elevation of the left shoulder to 90 degrees with pain and abduction to 90 degrees with severe pain." *Id*.  But, in September 2019, an examination of Plaintiff's left shoulder showed "nearly full" muscle strength. Tr. 36–37.  The ALJ further noted that "[s]ince July 2019, the record does not show that the claimant has required intensive therapies, assistive devices, surgeries, or extra supports, further reducing the consistency of the description of her symptoms and limitations." Tr. 37.  As such, the ALJ reasonably determined that Plaintiff's tendinopathy did not "significantly" limit her ability to perform work.  *See* 20 C.F.R. §§ 404.1522(a), 416.922(a).

Plaintiff avers that the ALJ's conclusion on this issue is "not borne out in th[e] record as it relates to Plaintiff's shoulder impairment." ECF 11-1, at 16.  As support for this contention, Plaintiff cites, among other things, an October 27, 2020, orthopedic clinic report. *Id*. (citing Tr. 3761). But this report notes—contrary to Plaintiff's assertion—that Plaintiff possesses "[n]o upper extremity defects." Tr. 3761.  Plaintiff additionally relies upon a September 23, 2020, rheumatology report which notes that Plaintiff's shoulders were only "moderately restricted bilaterally, more so left side." ECF 11-1, at 16 (citing Tr. 3828–29).  But Plaintiff fails to explain how this restriction is sufficient to support her argument that the ALJ erred in declining to find this impairment severe.  Plaintiff also cites a June 10, 2021, left shoulder evaluation to substantiate her allegedly severe tendinopathy. *Id*. (citing Tr. 3952).  But, while tendinopathy was noted here, the physician observed that Plaintiff's shoulder pain was not commensurate with Plaintiff's objective impairments. Tr. 3952.  As such, it is unclear how this evidence supports the level of severity that Plaintiff alleges.  Accordingly, I find that because the ALJ "analyzed relevant evidence and

---

[6] "Tendinopathy is the broad term for any tendon condition that causes pain and swelling," and it encompasses both "tendinitis" (an inflammation of the tendon) and "tendinosis" (a breakdown of the tendon's collagen fibers over time). Tendinopathy, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/22289-tendinopathy (last visited June 9, 2023).

sufficiently explained [their] findings and rationale" on the issue, the ALJ's designation of Plaintiff's tendinopathy as non-severe is supported by substantial evidence, and thus, does not compel remand.[7]  *Sterling Smokeless Coal Co.*, 131 F.3d at 439–40.

B.    The ALJ Did Not Err at Step Three.

The Court next considers Plaintiff's argument that the ALJ erred at step three by failing to address whether Plaintiff's cervical spinal stenosis meets or equals a listed impairment.  ECF 11-1, at 16.  At step three, an ALJ determines whether a claimant's impairments are severe enough to meet or medically equal a particular listing in the Listing of Impairments (the "Listings").  *See* 20 C.F.R. §§ 404.1525, 416.925.  The Listings "describe[] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity . . . ."  *Figgs v. Saul*, No. JMC-20-334, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021).  "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met."  *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).  The Plaintiff has the burden of showing that she meets all specified medical criteria of a given Listing at step three.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, Plaintiff contends that "proper analysis of Listing 1.15 would have yielded a finding of disability" because her cervical spinal stenosis meets or equals Listing 1.15.  ECF 11-1, at 20.  As Plaintiff acknowledges, a claimant seeking to demonstrate that she meets or equals Listing 1.15 must have an

[i]mpairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

1.  A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

---

[7] Defendant argues that even if the ALJ erred at step two, such error was harmless.  ECF 14-1, at 8.  I agree.  Despite the ALJ's step-two determination, the ALJ addressed tendinopathy at subsequent steps in the decision.  *See, e.g.*, Tr. 35–36.  Plaintiff suggests that the ALJ's alleged step-two error was nonetheless harmful because "the ALJ determined in the RFC . . . that Plaintiff can frequently reach overhead with the left upper extremity and that she can frequently handle bilaterally."  ECF 11-1, at 16.  But Plaintiff neither argues that these RFC limitations constitute error, nor explains how the ALJ's RFC determination would have differed if Plaintiff's tendinopathy were found to be severe.  Given this, it is unclear how any error—assuming it occurred—was harmful.  *See Sharon W.*, 2019 WL 2234499, at *2 ("Because Plaintiff made the threshold showing that several of her other impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments, both severe and non-severe.  Any step two error, therefore, would not necessitate remand.") (internal citations omitted).

    2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

    3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

ECF 11-1, at 17–18 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15(D)). Plaintiff argues that she meets the second criterion listed above because of her "documented medical need for a cane" and because "the residual mobility issues that have persisted following [her] stroke, together with her left shoulder tendinopathy with rotator cuff tear, ha[ve] resulted in an inability to use the left upper extremity to independently initiate, sustain, and complete work-related activities[.]" *Id.* at 19. To be a "documented medical need," "there [must be] evidence from a medical source that supports [the claimant's] medical need for an assistive device . . . for a continuous period of at least 12 months[.]" 20 C.F.R. 404, Subpt. P, App. 1, § 1.00C6a. Though the regulations "do not require that [a claimant] have a specific prescription for the assistive device," the "evidence must describe any limitation(s) in [the claimant's] upper or lower extremity functioning and the circumstances for which [the claimant] need[s] to use the assistive device." *Id.*

    Plaintiff identifies several treatment records indicating her use of a cane. ECF 11-1, at 19 (citing Tr. 1519, 2414, 3033, 3716).[8] But "it is not enough that scattered portions of the record might support certain of the required elements of a listing. Rather the 'claimant must show that he meets all the requirements of the listing consistently.'" *Aguirre v. Saul*, 568 F. Supp. 3d 477, 484 (S.D.N.Y. 2021) (emphasis omitted) (quoting *John Q. v. Comm'r of Soc. Sec.*, No. 19-CV-1249, 2021 WL 1578297, at *6 (W.D.N.Y. Apr. 22, 2021)). Here, as the ALJ correctly noted, "[a] review of the record does not establish a medical necessity for a cane or other assistive device." Tr. 36 (summarizing the relevant evidence and evaluating Plaintiff's use of a cane). During the hearing, Plaintiff testified to using her cane only twice during any given week. Tr. 67. Moreover, the record lacks any evidence that Plaintiff has used or requires a wheeled mobility device. As such, Plaintiff fails to fulfill the second criterion and must therefore fulfill either the first or third criterion under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15(D).

---

[8] The records Plaintiff cites note that, as of October 27, 2020, Plaintiff "has been recently using a cane intermittently," Tr. 2414, and that she was prescribed a cane when hospitalized for a non-ST elevation myocardial infarction ("NSTEMI") in December 2020, Tr. 3033. One page Plaintiff cites summarily notes Plaintiff's use of "glasses" and a "cane" without further explanation, Tr. 1519, and the other page Plaintiff cites does not refer to a cane at all, Tr. 3716. Plaintiff has not explained how this evidence is sufficient to support her claim that she has a documented medical need for a cane.

*April H. v. Kijakazi*
Civil No. 22-2474-BAH
June 14, 2023
Page 7

A careful review of the record makes clear that she cannot do so.  The first criterion cannot be met because Plaintiff, per her own acknowledgment, "does not use a walker or bilateral canes," ECF 11-1, at 19, and the record lacks any evidence that Plaintiff needs or has used bilateral crutches or a wheeled mobility device.  Lastly, Plaintiff fails to establish that the third criterion is met because neither the ALJ nor Plaintiff suggests that Plaintiff cannot use her right upper extremity.  Given this, Plaintiff fails to fulfill any of the three criteria listed under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15(D), which forecloses her ability to meet or equal Listing 1.15.  *See Sullivan*, 493 U.S. at 530; *see also Arnette R. v. Kijakazi*, No. 22 C 4225, 2023 WL 3043199, at *6–7 (N.D. Ill. Apr. 21, 2023) (affirming the ALJ's determination that the claimant did not meet the requirements of Listing 1.15 despite some use of a cane was supported by substantial evidence because the claimant's "[t]reatment records regularly revealed normal gait, intact sensation, and 5/5 strength, and do not generally discuss the need to use a cane"); *Wilkes v. Kijakazi*, No. 4:22-CV-01591, 2023 WL 3855317, at *5 (S.D. Tex. June 5, 2023) (affirming an ALJ's determination that the claimant did not meet the requirements of Listing 1.15 where the ALJ weighed the claimant's activities of daily living and "lack of objective evidence as to the alleged severity of [the claimant's] impairments" that "spurred the use of [any] assistive devices").

C.     The ALJ Properly Evaluated the Opinion Evidence.

As a final matter, the Court considers Plaintiff's objections to the ALJ's evaluations of the opinions of Drs. Rahimian and Dhir, respectively.  ECF 11-1, at 20–27.  "For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled."  *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c).  An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).  Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision."  *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  Regarding consistency, the ALJ looks to the degree of consistency between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

With respect to the opinion rendered by Dr. Ali Rahimian, Plaintiff does not suggest that the ALJ disregarded any relevant factors under 20 C.F.R. §§ 404.1520c or 416.920c.  Rather, Plaintiff argues that the ALJ improperly rejected restrictions opined by Dr. Rahimian "without adequately addressing the relevant evidence which supports the opinion."  ECF 11-1, at 23.  Plaintiff's argument is unavailing.  Here, the ALJ adequately assessed Dr. Rahimian's opinion, dated May 6, 2019, which found that Plaintiff was unable to work due to physical and mental impairments and limited her to: (1) sitting, standing, and/or walking for no more than one hour; (2) bending and reaching for one hour; and (3) never climbing or squatting.  Tr. 38.  The ALJ

found the opinion unpersuasive because "most [of Plaintiff's other] examinations show that she retains normal muscle strength of the lower extremities, intact sensation, and normal physiological gait without the use of a cane." *Id.* (noting that while Plaintiff "endorsed left shoulder pain, most examinations show that she displayed only mildly diminished muscle strength in the left arm and normal strength in the right arm"). The ALJ also noted that Plaintiff "exhibited mostly normal physical abilities" during examinations, and that Plaintiff's psychologist reported no "significant mental symptoms." *Id.* Accordingly, the ALJ's RFC did not incorporate any limitations opined by Dr. Rahimian. Tr. 33.

Plaintiff contends that this assessment was unsupported by substantial evidence because the ALJ "cherry-pick[ed]" from a medical record which is "replete with evidence to support the limitations in reaching which Dr. Rahimian assessed." ECF 11-1, at 22. Because Plaintiff fails to identify any such evidence, I disagree. Plaintiff also identifies documentation within the record which allegedly "support[s] the limitations in sitting, standing and walking assessed by Dr. Rahimian." *Id.* (citing Tr. 1060, 1264, 1271, 3948). However, one such document is Dr. Rahimian's opinion itself. *See* Tr. 1271–72 (Dr. Rahimian's opinion dated May 6, 2019). Aside from this apparent oversight, it is unclear how the other cited evidence supports Dr. Rahimian's findings. *See* Tr. 1060 (noting that Plaintiff's posture and gait "were normal"), Tr. 1264 (not discussing any functions relevant to Dr. Rahimian's opinion), Tr. 3948 (noting that cervical and lumbar motions were "normal"). Plaintiff also suggests that the ALJ "substituted his own lay medical opinion for" Dr. Rahimian's recommendations. ECF 11-1, at 24. But even a cursory reading of the ALJ's assessment belies this contention and, in any event, Plaintiff fails to explain what lay medical opinions the ALJ offered. As such, I find that the ALJ's assessment of Dr. Rahimian's opinion was supported by substantial evidence.

Lastly, the Court considers Plaintiff's contention that the ALJ erroneously failed to evaluate the supportability and consistency of the consultative opinion of Dr. Shakuntala Dhir. *Id.* at 25–27. The ALJ found a June 19, 2018, opinion by Dr. Dhir to be persuasive. Tr. 38. Dr. Dhir "indicated that [Plaintiff's] capacity for understanding was preserved, but that social interaction was currently poor (she does not socialize anymore), and she may have difficulty adapting to stressors at work." *Id.* Contrary to Plaintiff's assertion, the ALJ adequately evaluated the supportability of Dr. Dhir's opinion by noting that Dr. Dhir's psychological evaluation of Plaintiff was "extensive," and that she provided "clear explanations about" Plaintiff's limitations "based on her findings." *Id.* The ALJ also addressed the opinion's consistency with the remainder of the record by noting that the opinion "is substantially consistent with the claimant's reported capabilities." *Id.* Given this, I find that the ALJ adequately considered supportability and consistency in evaluating this opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Plaintiff also contends that the ALJ should have explained their reasons for omitting the limitations proffered by Dr. Dhir, given that the ALJ found Dr. Dhir's opinion persuasive. ECF 11-1, at 25–26. But "even if an ALJ finds an opinion to be persuasive or very persuasive, the ALJ is 'not required to adopt all of [the medical source's] opinion solely because [he/she] found the opinion as a whole persuasive.'" *Benson v. Kijakazi*, No. 21-1345, 2022 WL 17406051, at *1 n.1 (W.D. Pa. Dec. 2, 2022) (brackets in original) (quoting *Wilkinson v. Comm'r Soc. Sec.*, 558 F.

*April H. v. Kijakazi*
Civil No. 22-2474-BAH
June 14, 2023
Page 9

App'x. 254, 256 (3d Cir. 2014)).   "Nor must an ALJ choose to either include persuasive opinions/findings in a claimant's RFC verbatim or explicitly reject any part of a persuasive . . . opinion that does not make it into the RFC."  *Id.* (internal quotation marks omitted).  Accordingly, remand is not warranted on this basis.

## V.   **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 11, is DENIED and Defendant's motion for summary judgment, ECF 14, is GRANTED.  Plaintiff's alternative motion for remand, ECF 11, is DENIED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.


Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge